Eric Baum NY#2591618 (Pro Hac Vice To Be Filed)
Andrew Rozynski NY#5054465 (Pro Hac Vice To Be Filed)
**EISENBERG & BAUM, LLP**
24 Union Square East
Fourth Floor
New York, NY 10003
Telephone No. 212-353-8700
Facsimile No. 212-353-1708
E-mail: ebaum@EandBLaw.com
          arozynski@EandBLaw.com

William A. Richards #013381
Peter A. Silverman #020679
**BASKIN RICHARDS PLC**
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone No. 602-812-7979
Facsimile No. 602-595-7800
E-mail: brichards@baskinrichards.com
          psilverman@baskinrichards.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paula Riegler, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Maricopa County Special Health Care District d/b/a Valleywise Health, | |
| Defendant. | |

Plaintiff Paula Riegler ("Plaintiff") brings this action, by and through her undersigned counsel, Eisenberg & Baum, LLP (pro hac vice application to be filed), and Baskin Richards PLC, and for her claims against Defendant Maricopa County Special Health Care District d/b/a Valleywise Health ("Defendant"), hereby alleges as follows:

**PRELIMINARY STATEMENT**

1.      Plaintiff is a deaf individual who communicates primarily in American Sign Language ("ASL"), which is her expressed, preferred, and most effective means of communication. Defendant, Maricopa County Special Health Care District d/b/a Valleywise Health, discriminated against Plaintiff by failing to provide auxiliary aids and services despite her requests for effective communication. Defendant discriminated against Plaintiff by failing to provide Video Remote Interpreting ("VRI"[1]) systems or on-site ASL interpreters when necessary, by providing malfunctioning VRI systems, by failing to adequately train its personnel in the use of VRI systems, and by requiring Plaintiff to rely upon other means of communication, including passing of notes and/or other methods that are inadequate for Plaintiff's participation in her medical treatment. Plaintiff seeks declaratory relief; compensatory and punitive damages; and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq.; Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794, and its implementing regulation, 45 C.F.R. Part 84; Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116; and other common law rights.

2.      Defendant has demonstrated and continues to demonstrate that Defendant's staff is not properly trained regarding how to identify when live, in-person interpreter services are required for effective communication with Deaf patients and their companions, and when other forms of communication, including VRI systems, the passing of written notes, or lip-reading offer inadequate and ineffective communication for a deaf patient.

3.      Defendant has similarly demonstrated that Defendant's staff is not properly trained regarding how to utilize or maintain VRI systems or fix malfunctioning VRI systems. This lack of training resulted in delays and failures to communicate with Plaintiff in critical medical care situations. As a result of these delays and failures, Plaintiff received services that

---

[1] Video remote interpreting is a video telecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or off-site interpreter.

2

were objectively substandard and that were not equal to the service provided to hearing patients.

4. Upon information and belief, despite being put on notice, Defendant continues to wrongfully insist that inadequate forms of communication be utilized for Plaintiff as a substitute for qualified, in-person ASL interpreters or functioning VRI systems.

5. Plaintiff brings suit to address these discriminatory practices and obtain compensation for the damages caused by Defendant's discriminatory and unlawful policies, procedures and practices.

## THE PARTIES

6. Defendant Maricopa County Special Health Care District is a political subdivision of the State.

7. Upon information and belief, Maricopa County Special Health Care District does business as Valleywise Health.

8. Valleywise Health was formerly named Maricopa Integrated Health System ("MIHS"). Based on information and belief, MIHS changed its name to Valleywise Health in 2019.

9. At all times hereinafter mentioned, Defendant was and is still licensed and doing business in the State of Arizona, with a principal place of business in Phoenix, Arizona.

10. Upon information and belief, Defendant operates a hospital, behavioral health centers, comprehensive health centers and community health centers that are located throughout the Phoenix metropolitan area. https://www.valleywisehealth.org/about.

11. Defendant's facilities include Valleywise Health Medical Center, which is located at or near 2601 East Roosevelt Street, Phoenix, AZ 85008. Defendant's facilities also include Valleywise Comprehensive Health Center, which is located at or near 2525 East Roosevelt Street, Phoenix, AZ, 85008. Their actions and omissions give rise to the claims in this matter.

12. Valleywise Health Medical Center and Valleywise Comprehensive Health Center are public entities under the ADA, and Defendant is a recipient of federal financial assistance. Thus, Defendant is subject to the requirements of the ADA, the RA, and the ACA.

13. On information and belief, Defendant had sufficient financial resources to afford

3

all aids and services necessary to provide effective communication to Plaintiff.

14. Plaintiff Paula Riegler is an individual who at all material times resided in Maricopa County, Arizona.

15. Plaintiff is profoundly Deaf and communicates primarily in ASL, and is substantially limited in the major life activities of hearing and speaking within the meaning of the ADA, the RA, and the ACA.

16. Plaintiff was a patient at Defendant's facilities where she was denied appropriate auxiliary aids and services for her disabilities despite repeated requests to facilitate effective communication between her and Defendant's agents, employees, and/or medical staff during Plaintiff's medical treatment and care.

17. Defendant's denial of effective communication for Plaintiff included denying Plaintiff access of any kind to onsite qualified ASL interpreters and/or VRI systems during a medical appointment at Defendant's facility in October 2019.

18. Defendant also denied Plaintiff's request for an onsite qualified ASL interpreter during a previous visit to Defendants' facility in November 2017.  Plaintiff tried to communicate using VRI equipment at the facility but it often stopped, became pixilated, or lacked visibility, leaving communication unreliable or nonexistent. Instead of providing an on-site ASL interpreter when the VRI equipment did not work, Defendant chose to do nothing at all or to force Plaintiff to rely on other inadequate methods of communication, resulting in ineffective communication with Plaintiff.

## JURISDICTION & VENUE

19. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant has sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced, the parties all resided within this District at all material times, and the acts and omissions giving rise to the causes of action asserted herein occurred in this District.

4

## STATEMENT OF FACTS

21. Plaintiff Paula Riegler is profoundly deaf and requires a qualified sign language interpreter to communicate effectively in medical settings.

22. In or about 2014, Ms. Riegler was diagnosed with breast cancer. At the time, she lived in Tucson, Arizona, where she received treatment for the disease.

23. In the years since, Plaintiff has routinely scheduled follow-up examinations and consultations with physicians and other medical professionals to monitor and preserve her health.

**Plaintiff's Appointment at Valleywise Health Medical Center**

24. On November 1, 2017, Ms. Reigler went to Defendant's facility, Valleywise Health Medical Center, located at or near 2601 East Roosevelt Street in Phoenix, Arizona for a follow-up exam relating to her breast cancer.

25. Plaintiff had requested a live interpreter prior to her appointment. Defendant assured Plaintiff that a live in-person interpreter would be provided.

26. When Plaintiff arrived for her appointment, Defendant failed to provide the live interpreter that Plaintiff had requested. Instead, Defendant required Plaintiff to try to communicate using a VRI device.

27. Defendant's staff did not know how to set up or operate the VRI system. Plaintiff was forced to wait in her patient gown and with the door to the room wide open as Defendant's staff walked in and out in search of someone with knowledge of how to set up and operate the VRI system.

28. Eventually, Defendant's staff appeared to be able to hear the interpreter's voice over the VRI, but Plaintiff could not see the interpreter's face. The interpreter instructed Defendant's staff on how to get the screen on the VRI device to illuminate.

29. Finally, a nurse left to collect the doctor but as soon as the doctor arrived, the VRI equipment began to malfunction. The doctor left the room while Defendant's staff attempted to repair the device.

30. After another delay, the VRI showed signs of functioning. The doctor returned,

only to have the equipment malfunction again.

31. Plaintiff pointed out for the doctor that the VRI device malfunctioned, but the doctor continued speaking anyway. When Plaintiff indicated that she could not understand the doctor due to the malfunctioning VRI, the doctor left again.

32. By the time the VRI equipment started to function properly, Plaintiff's appointment was all but over.

33. The doctor said some words to Plaintiff about diet and then left. Plaintiff had important questions and concerns to address with the doctor but never had the opportunity.

34. Plaintiff left her appointment at Defendant's facility extremely frustrated, confused, and scared.

**Plaintiff's Appointment at Valleywise Comprehensive Health Center**

35. On or about October 10, 2019, Plaintiff visited Defendant's facility at 2525 E. Roosevelt Street in Phoenix, Arizona.

36. Defendant had advance notice that Plaintiff would require an onsite qualified ASL interpreter or a VRI system to communicate effectively with Defendant's staff.

37. The nurse brought Plaintiff to a room for an initial examination. There was onsite interpreter so Plaintiff requested the VRI. The nurse assured Plaintiff the VRI was on its way and continued with her examination of Plaintiff without it.

38. The nurse escorted Plaintiff to the physician's office and Plaintiff requested the VRI again. The nurse told Plaintiff the VRI was coming but it never did.

39. The doctor entered the office and began speaking to Plaintiff. Plaintiff did not understand what the doctor was saying and requested the VRI an additional time. The doctor indicated that the VRI was upstairs and asked to communicate with Plaintiff by passing notes.

40. Plaintiff could not communicate effectively regarding her medical issues by exchanging notes.

41. Plaintiff had critical matters to discuss such as whether she needed an ultrasound for her upper chest. Plaintiff was also confused as to what the doctor was recommending when it came to hormone therapy.

6

42. Without the VRI or a qualified, on-site ASL interpreter, Plaintiff was unable to communicate with Defendant's staff regarding these and other important issues. Plaintiff again left Defendant's facility distraught.

43. Defendant's failure to provide a qualified sign language interpreter, a VRI device of any kind and/or a functioning VRI device made Plaintiff's treatment and experiences more difficult and caused harm because it prevented effective communication between Plaintiff and Defendant's staff.

44. As a result of Defendant's failure to ensure effective communication with Plaintiff, Plaintiff received services that were objectively substandard and were inferior to services provided to patients who can hear.

45. Defendant intentionally discriminated against Plaintiff and acted with deliberate indifference to her communication needs, causing her to endure humiliation, fear, anxiety, and emotional distress.

46. Due to Defendant's refusal to provide effective communication, Plaintiff did not meaningfully understand critical information about her diagnoses, prognoses, medications and/or treatment options and lacked a full and complete understanding of the risks and benefits thereof.

47. As alleged above, Plaintiff repeatedly put Defendant's staff on notice that communication was not effective by alerting them of the need for qualified ASL interpreters and/or VRI systems, and the inadequacy of handwritten communications, gestures, and other forms of communication.

48. Despite such notice, Defendant failed and/or refused to provide qualified on-site ASL interpreters, failed and/or refused to provide VRI systems, failed and/or refused to ensure that available VRI systems were properly functioning, failed and/or refused to ensure that the Defendant's agents were properly trained and qualified in the use of the VRI systems, and failed and/or refused to fix VRI systems that were not working properly.

49. Rather, Defendant knowingly limited Plaintiff to the little communication she could achieve through such inadequate methods as vague gestures or cryptic notes.

50. Upon information and belief, Defendant is aware of its obligations under federal and state law to provide adequate and effective communication for Deaf, hard of hearing, and speech impaired individuals that visit its medical facilities as either patients or companions of patients.

51. Also upon information and belief, Defendant and its agents were aware that the failure to provide adequate and effective communication to Plaintiff could result in serious and harmful anxiety, confusion, lack of understanding, frustration, depression and other serious emotional harms, and could prevent Plaintiff from enjoying the right and ability to understand and participate in her medical care.

52. As a result of Defendant's failure to ensure effective communication with Plaintiff, Plaintiff received service that was objectively substandard and that is inferior to service provided to patient family members who can hear.

53. Furthermore, despite its knowledge and understanding of its legal obligations to provide adequate and effective communication to the Plaintiff, and its knowledge and understanding that the failure to provide adequate and effective communication to Plaintiff could and would result in denial of the Plaintiff's rights under state and federal law and in serious and material harm and injury to Plaintiff, Defendant knowingly, intentionally and maliciously failed and/or refused to provide adequate and effective communication to Plaintiff in an intentional and/or deliberately indifferent violation of Plaintiff's rights.

54. Defendant's actions and omissions resulting in harms to Plaintiff were willful, malicious, intentional, recklessly indifferent and undertaken with an evil mind and motive and with disregard for and deliberate indifference to the legal rights of Plaintiff under federal and state law and the substantial risk of serious and material harms to Plaintiff.  Therefore, to the extent allowed by any applicable law, Defendant's actions would warrant the imposition of punitive or exemplary damages to punish the Defendant for its wrongful conduct and to deter other similarly situated persons or entities from similar future conduct.

**COUNT 1: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

55. Plaintiff repeats and re-alleges all preceding allegations of this Complaint in

support of this claim as if set forth fully herein.

56. At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 has been in full force and effect and has applied to the Defendant's conduct.

57. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to the Defendant's conduct.

58. At all times relevant to this action, Plaintiff has had substantial impairment to the major life activities of hearing and speaking within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9), and its implementing regulations at 45 C.F.R. § 84.3(j). Accordingly, she is an individual with a disability as defined under the Rehabilitation Act.

59. At all times relevant to this action, Plaintiff was qualified to receive services through Defendant's facilities.

60. Upon information and belief, at all times relevant to this action, Defendant has received federal financial assistance, including Medicaid reimbursements, and has been principally engaged in the business of providing health care. Therefore, Defendant and its associated medical facilities qualify as a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

61. Pursuant to Section 504, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794.

62. As set forth in the foregoing allegations about the Plaintiff's treatment by and interactions with Defendant and its agents and medical personnel operating within its facilities, Defendant has discriminated against and continues to discriminate against Plaintiff solely on the basis of her disability by denying her meaningful access to the services, programs, and benefits the Defendant offers to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of Section 504 of the Rehabilitation Act. 29 U.S.C. § 794.

63. As set forth in the foregoing allegations about Plaintiff's treatment by and interactions with Defendant and its agents and medical personnel operating within its facilities, Defendant further discriminated against Plaintiff by: 1) failing to ensure adequate and effective communication with Plaintiff through VRI systems or the specific provision of qualified, in-person sign language interpreters; 2) failing to ensure adequate and effective communication with Plaintiff through VRI systems that functioned properly; and 3) requiring Plaintiff to rely upon ineffective and inadequate means of communication including malfunctioning VRI systems, passing of handwritten notes, verbal gestures and/or lip reading.

64. Defendant's violation of its obligations and the Plaintiff's rights under the Rehabilitation Act and its implementing regulations has caused substantial damages, suffering, loss and harm to Plaintiff, including, without limitation, serious and lasting emotional harm, anxiety, frustration, fear and other serious emotional conditions or symptoms.

65. Plaintiff is therefore entitled to seek and recover all appropriate compensatory damages for the injuries and losses she sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

66. Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

67. Defendant's actions and omissions resulting in harms to Plaintiff were willful, malicious, intentional, recklessly indifferent and undertaken with an evil mind and motive and with disregard for and deliberate indifference to the legal rights of Plaintiff under federal and state law and the substantial risk of serious and material harms to Plaintiff. Therefore, to the extent the courts were to determine that punitive damages were recoverable under the Rehabilitation Act, Defendant's actions would warrant the imposition of punitive or exemplary damages to punish the Defendant for its wrongful conduct and to deter other similarly situated persons or entities from similar future conduct.

**COUNT 2: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

68. Plaintiffs repeat and reallege all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

69. At all times relevant to this action, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.*, has been in full force and effect and has applied to Defendant's conduct.

70. At all times relevant to this action, the United States Department of Justice regulations implementing Title II of the ADA, 28 C.F.R. Part 35, were in full force and effect and applied to the Defendant's conduct.

71. At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of hearing and speaking. Accordingly, she is considered an individual with a disability as defined under the ADA, 42 U.S.C. § 12102(2).

72. Defendant is a public entity within the meaning of Title II of the ADA, 42 U.S.C. § 12131(1).

73. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

74. Federal regulations implementing Title II of the ADA provide that a public entity may not "(i) deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; (ii) afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; [or] (iii) provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1).

75. Federal regulations implementing Title II of the ADA further provide that a public entity "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).

76. Federal regulations implementing Title II of the ADA further provide that a public entity "shall furnish appropriate auxiliary aids and services where necessary," and "in

11

order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b).

77. Federal regulations implementing Title II of the further provide that: "A public entity that chooses to provide qualified interpreters via VRI services shall ensure that it provides— (1) Real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; (2) A sharply delineated image that is large enough to display the interpreter's face, arms, hands, and fingers, and the participating individual's face, arms, hands, and fingers, regardless of his or her body position; (3) A clear, audible transmission of voices; and (4) Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI." 28 C.F.R § 35.160.

78. Based on all of the foregoing allegations confirming the Defendant's treatment and interactions with Plaintiff, Defendant discriminated against Plaintiff on the basis of her disabilities by: (1) denying her an equal opportunity to participate in and benefit from Defendant's goods, services, facilities, privileges, advantages, and/or accommodations; (2) failing to ensure adequate and effective communication through the provision of VRI systems or on-site qualified Sign Language interpreters; (3) failing to ensure adequate and effective communication by relying on malfunctioning VRI systems; and (4) failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to an individual with disabilities.

79. Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to the ADA, 42 U.S.C. § 12133.

80. Plaintiff is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12133 and/or common law.

**COUNT 3: VIOLATIONS UNDER AFFORDABLE CARE ACT SECTION 1557**

81. Plaintiff repeats and re-alleges all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

82. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116 was in full force and effect and applied to the Defendant's conduct.

83. At all times relevant to this action, Section 1557, 42 U.S.C. § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

84. At all times relevant to this action, Plaintiff is substantially limited in the major life activities of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 U.S.C. § 18116.

85. At all times relevant to this action, such Plaintiff's primary language for communication was American Sign Language and not English; and such Plaintiff had limited ability to read, write, speak, or understand English, and was an individual with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

86. At all times relevant to this action, Defendant received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

87. Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 U.S.C. § 18116.

88. Defendant has discriminated against Plaintiff solely on the basis of her disability and her limited English proficiency by denying her meaningful access to the services, programs, and benefits the Defendant offers to other individuals by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1557, 42 U.S.C.

§ 18116.

89. Defendant discriminated against Plaintiff by failing to ensure effective communication through the providing of VRI systems and/or qualified sign language interpreters on-site, or through VRI machines that worked.

90. On information and belief, the refusal to offer qualified on-site ASL interpreter services is as a result of a policy or practice of Defendant to prohibit or impede the use of on-site qualified sign language interpreters without regard to whether VRI services will provide effective communication.

91. Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

92. Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief against the Defendant:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies and procedures have subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act, and Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

B. Enjoin Defendant from implementing or enforcing any policy, procedure, or practice that denies individuals who are deaf or hard of hearing, such as Plaintiff, meaningful access to and full and equal enjoyment in Defendant's services or programs;

C. Order Defendant:

   i. to develop and comply with written policies, procedures, and practices to

ensure that Defendant does not discriminate in the future against Plaintiff and other similarly situated individuals who are deaf or hard of hearing or companions of deaf or hard of hearing persons by failing to provide effective communication;

ii. to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their rights to effective communication under all applicable federal and state law. This notification will include posting explicit and clearly worded notices that Defendant will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

iii. to develop, implement, promulgate, and comply with a policy to ensure, in the event any facility operated by Defendant utilizes a Video Remote Interpreting System ("VRI"), that such system has all functions and characteristics necessary to ensure it provides for effective communication given all the conditions and circumstances present, including without limitation that such system utilizes; 1) a high-speed Internet connection; 2) a video screen and camera with appropriate size, resolution, position, capture angle, focus, and proximity to the deaf individual; and 3) appropriate audio quality. When necessary for effective communication the equipment must be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

iv. To provide at all times and at all Defendant's medical facilities utilizing VRI systems adequately trained and experienced employees or contractors sufficient to ensure that any VRI systems or related communications equipment or resources are maintained at all times in proper working condition and can be promptly fixed in time to avoid any prejudice or

unreasonable delay in patient care or companion communication;

 v. to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard-of-hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

 vi. to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night and whenever the services of such interpreters are required to provide effective communication to any deaf or hard of hearing patient or companion;

 vii. to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116;

 viii. to train all its employees, staff, and other agents on a regular basis about how to properly assess when VRI or other alternative means of communication do not provide effective communication for a deaf patient or other deaf and hard of hearing companions or visitors to the Defendant's facilities;

 ix. to train its employees, staff, and other agents on a regular basis about Defendant's policies regarding when and how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when requested by deaf or hard of hearing patients or companions;

D. Award to Plaintiffs:

 i. compensatory damages pursuant to Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C.

16

§ 18116 sufficient to fully remedy all damages, suffering, injury and losses caused to Plaintiffs by Defendant;

ii. to the extent allowed by any applicable law, punitive damages in an amount sufficient to punish the Defendant and to deter similarly situated persons or entities from similar future conduct;

iii. reasonable costs and attorneys' fees pursuant to the Title II of the ADA, Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116;

iv. interest on all amounts at the highest rates and from the earliest dates allowed by law;

v. any and all other relief that this Court finds just, necessary and appropriate.

## JURY DEMAND

Plaintiff demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

RESPECTFULLY SUBMITTED this 31st day of October, 2019.

BASKIN RICHARDS PLC


/s/ William A. Richards
William A. Richards
Peter A. Silverman
2901 N. Central Avenue, Suite 1150
Phoenix, AZ  85012

AND

EISENBERG & BAUM, L.L.P.
Eric Baum, Esq.
Andrew Rozynski, Esq.
24 Union Square East
Fourth Floor
New York, NY 10003
*Attorneys for Plaintiff*